210 So.2d 859 (1968)
RUSSELL HOUSE MOVERS, INC., and American Surety Company of New York, Petitioners, Cross-Respondents,
v.
Joe C. NOLIN and Florida Industrial Commission, Respondents, Cross-Petitioner.
No. 36788.
Supreme Court of Florida.
May 22, 1968.
Rehearing Denied June 24, 1968.
*860 Blackwell, Walker & Gray, Miami, for petitioners, cross-respondents.
Donald Feldman and Feldman & Abramson, Miami, for respondent, cross-petitioner.
Patrick H. Mears, Tallahassee, and J. Franklin Garner, Lakeland, for Florida Industrial Commission, respondent.
ERVIN, Justice.
We are requested by petition of Russell House Movers, Inc. and American Surety Company of New York (Employer-Carrier) and Cross-petition of Joe C. Nolin (Claimant) to review by certiorari an order of the Florida Industrial Commission approving an amended order of the Deputy Commissioner entered on May 27, 1966.
From the hearings in the case culminating in the amended order, the Deputy found claimant compensably injured his back in an accident in his employment as a heavy equipment foreman on December 24, 1963. Claimant was loading a truck with the use of another piece of equipment. The equipment fell from a loading ramp and as a result Claimant was turned into *861 his seat, twisting his back from the shoulders to the hips.
At the time of the accident Claimant's average weekly wage was $125.00 and temporary total compensation was paid him to July 26, 1964. From the hearings the Deputy also found Claimant had had several prior accidents that injured his back, two of which were with the Employer; that he had a myleographic study of his back in 1960 after one of his injuries; that he had been told by one of the physicians who examined him he had a herniated disc and by another physician that he had a ruptured disc; subsequent to 1960 he had further back difficulties and was told by still another physician who examined him that ultimately he would go to back surgery just by ordinary living and that the possibilities were he would have future back trouble and trauma could cause it sooner; that after the accident of December 24, 1963 two examining physicians (Neal and Sweeney) testified they found Claimant had not reached maximum medical improvement and was entitled to a myleographic study; that prior to the December 24, 1963 accident Claimant went from one job to another without too much lost time. He occasionally wore a brace for his back.
The Deputy found Claimant had not reached maximum medical improvement, adding
"* * * that the previous accidents, which I find this Employer had knowledge of, pre-disposed the Claimant to further injury to the back; that Claimant was able to work subsequent to the former accidents but is now temporarily, totally disabled due to the accident of December 24, 1963; that 50% of the Claimant's present condition is due to the prior accidents and 50% to the accident of December 24, 1963."
The Deputy directed the Carrier to furnish Claimant a myleographic study and an operation, if warranted by the study; pay 50% of all medical bills subsequent to the hearings (certain prior medical bills were disallowed because they were not authorized by the Carrier due to Claimant having gone to Alabama and received medical treatment there not authorized by the physician provided for him in Florida by the Carrier); and pay $21 per week temporary total disability benefits at the rate of 50% from the date of the last hearing until Claimant reaches maximum medical improvement. Jurisdiction was reserved by the Deputy to determine the extent of temporary total or temporary partial disability benefits, if any, prior to the hearings which ended in the order of May 27, 1966; and for the purpose of determining the permanent partial disability suffered by Claimant, if any, after he had attained maximum medical improvement.
The petition questions whether there is competent, substantial evidence that the accident of December 24, 1963 was the producing cause of Claimant's current disability and need for medical care.
Two physicians (Neal and Sweeney) who examined and treated Claimant testified, from their examination of him and the history of his condition given them by him, that his back injury from said accident was capable of temporarily producing Claimant's current disability and his need for medical care. This testimony was sufficient to sustain the Deputy's finding on this point United States Casualty Company v. Maryland Casualty Company (Fla.), 55 So.2d 741. These two physicians expressed views to the effect maximum medical improvement had not been reached by Claimant; that a myleographic study of Claimant's back condition should be provided and an operation on his back performed, if warranted by the study. We find no basis for granting the petition on the points raised.
We turn now to consideration of the Cross-petition. It contends the Deputy erred in apportioning medical care and temporary compensation, noting that the Employer-Carrier never raised the issue of apportionment as a defense; that the Employer *862 had full knowledge the Claimant had prior back injuries in its employ and in the employ of others; and maintained there was no evidence of a pre-existing condition or disease independently contributing disability.
The record discloses that in 1955 the Claimant had his first severe back injury which required hospitalization. In subsequent years he had a chronic back condition which predisposed him to back injury and he sustained some four or five injuries to his back prior to his present disabling injury of December 24, 1963. But these later injuries were of slight duration, except one in February, 1963 which disabled him from working for some ten weeks and for which he was paid his first compensation benefits (six weeks' compensation). After the February, 1963 injury he resumed work for some eight months (with other employers and with Employer) until his present injury on December 24, 1963, the last four months of which he worked for Employer. During these four months, his Employer's principal officer, Mr. Leonard, testified, Claimant's attendance at work was very good and there were no complaints. The testimony disclosed Claimant worked as a heavy equipment foreman or moving supervisor in moving houses or fill and at times operated the moving equipment himself. Claimant testified he had no trouble with his back during the last eight months he worked; that during this time he was feeling fine and doing well. There is no testimony to the contrary. In fact, it appears Employer, for whom Claimant worked from time to time over a period of several years, asked Claimant in August, 1963 to return to work with Employer, knowing that Claimant had had previous back injuries with Employer and the back injury with another employer in February, 1963 which had disabled him for ten weeks.
There is no question but that the Claimant had had trouble with his back over a period of years, but his ability to work and his actual record of work until December 24, 1963 appear not to have been appreciably curtailed by his trouble. We have held that because a claimant's "condition could have become symptomatic at any time" was not justification for the Industrial Commission holding that "he [claimant] had not in fact sustained a compensable accident * * *" Simmons v. City of Coral Gables, Fla., 186 So.2d 493, 494. It is common knowledge that people do heal and may be rehabilitated. They can also subsequently be reinjured. Our Court has commented that one who in an exemplary spirit makes an honest effort to continue to earn a livelihood, regardless of his injury, should not be penalized. Brewer v. Pan American Airways, Inc., 156 Fla. 812, 24 So.2d 521. See also, Tingle v. Board of County Commissioners (Fla.), 174 So.2d 1, 2.
Both the Petitioners and Cross-Petitioner contend there is no evidence or other justification in the case for a 50% apportionment. In their brief the Petitioners state: "A review of this record shows no basis for the percentage of apportionment that the Deputy gave in this case." They say further: "The Deputy's apportionment of 50% to this accident and 50% to a pre-existing condition is pure speculation on his part and should be reversed." We agree. The present record is completely devoid of any testimony, expert or otherwise, which suggests any basis or percentages for an apportionment. Compare G. & L. Motor Corporation v. Taylor (Fla.), 182 So.2d 609, to the effect a deputy may not apportion where there is no evidence of any percentage of disability from a pre-existing disease or condition. For the Petitioners as well as the Claimant the case on this record is an "all or none" controversy as to allowance of compensation benefits.
Even if the present record presented evidence of any percentage of disability from a pre-existing disease or condition, we believe that an apportionment should not be made of the benefits awarded herein. That is, we conclude compensation *863 for temporary disability and medical benefits are not apportionable under the general scheme and intent of our workmen's compensation law. F.S.A. Sec. 440.02(19). When, therefore, as in the present case, there is competent substantial evidence to support the Deputy's finding that a claimant has suffered a compensable injury which is the producing cause of his temporary disability and need for medical care, such finding is determinative of claimant's right to full compensation. After a claimant reaches maximum medical improvement it may then be appropriate to apportion the award for his residual permanent disability.
In reasoning to the conclusion that compensation for temporary disability and medical benefit are not apportionable, we are guided by several considerations. In the first instance, we have attempted to ascertain controlling expressions of legislative intent.
There are two apportionment provisions in our present workmen's compensation law. One provision is set out in Section 440.02(19), F.S. and the other is contained in Section 440.15(5) (c). Section 440.02(19) provides in part:
"* * * Where a pre-existing disease or anomaly is accelerated or aggravated by accident arising out of and in the course of employment, only acceleration of death or the acceleration or aggravation of disability reasonably attributable to the accident shall be compensable with respect to permanent disability or death. Compensation for temporary disability and medical benefits provided by this chapter shall not be subject to apportionment under this subsection." (Emphasis supplied.)
The italicized portion of this section was added by the Legislature in 1965. Prior to this addition, this Court had construed Section 440.02(19) as requiring apportionment for temporary disability and medical benefits. See Shores Development, Inc. v. Carver, 164 So.2d 803 (Fla. 1964). As a result of the 1965 amendment, it is quite clear that the Legislature intended to exclude temporary disability and medical benefits from any form of apportionment under Section 440.02(19). The question remains whether Section 440.15(5) (c), which was unchanged by the 1965 Legislature and remains unchanged, was intended to be similarly limited in the scope accorded its apportionment provision.
Section 440.15(5) (c) provides:
"The fact that an employee has suffered previous disability or received compensation therefor shall not preclude him from benefits for a later injury nor preclude benefits for death resulting therefrom; but in determining compensation for the later injury or death his average weekly wages shall be such sum as will represent his earning capacity at the time of the later injury, provided, however, that an employee who is suffering from a previous disability shall not receive compensation for a later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with the previous disability."
It is noted this subsection reveals the absence of a limitation such as the one contained in Section 440.02(19), F.S. We are fully cognizant of the legislative intent suggested by the absence of such a limitation; that is, by omitting from Section 440.15(5) (c) the limitations set out in Section 440.02(19), it is arguable that the Legislature intended Section 440.15(5) (c) to apportion compensation for temporary disability and medical benefits. On the other hand, it is equally arguable that the affirmative expression set out in the later enacted Section 440.02(19) should control the scope of Section 440.15(5) (c) in the absence of underlying differences in the two sections suggestive of a meaningful basis for distinguishing their operative effects. In Stephens v. Winn-Dixie Stores, Inc., Fla., 201 So.2d 731 (1967), we noted that the two apportionment provisions were intended to have parallel applications since *864 there seems to be no logical reason to treat pre-existing disability resulting from injury any differently from pre-existing disability resulting from disease or other congenital defect. In view of the interpretation placed on these two apportionment sections in Stephens, the argument that Section 440.15(5) (c) should be construed to conform to the limitation contained in Section 440.02(19) is particularly persuasive. We do not, however, predicate our holding in the present case solely on the persuasive character of the foregoing argument. There is another impressive and cogent reason for concluding that Section 440.15(5) (c) was not intended to apportion temporary disability and medical benefits.
In Stephens v. Winn-Dixie Stores, Inc., supra, we held that the apportionment provision of Section 440.15(5) (c) and the reimbursement provision of Section 440.49(4) (c) are perfect equivalents and can only be applied as alternatives. Under Stephens, the provisions of the Special Disability Fund operate as a source of benefits to the employee since the amount reimbursable to the employer from the Fund is equivalent to the amount that would otherwise be apportioned out of the award in the absence of the Fund provisions. This interplay of the Fund and apportionment provisions of the Act as set forth in Stephens is significant for the purpose of defining the precise scope of the apportionment section. If temporary disability and medical benefits are apportionable under Section 440.15(5) (c), it is readily apparent that the Fund provision will not operate as a source of benefits to the employee since that provision is expressly limited to situations where an employee suffering from a pre-existing permanent physical impairment ineurs a subsequent permanent disability. Thus the net effect of construing temporary disability and medical benefits to be apportionable under Section 440.15(5) (c) would, in all cases where that section is applicable, preclude an employee from recovering full compensation. This result is certainly not harmonious with the general proposition that the Act is to be construed liberally in favor of the employee and would abrogate the often-affirmed maxim that "the employer takes the employee as he finds him." An employer's resort to the Special Disability Fund for reimbursement of the amount apportioned to represent the prior disability of impairment of a permanent nature only arises in situations where the employer took the "employee as he found him," i.e., with knowledge of his prior disability. Section 440.49(4) (b). We conclude, therefore, the Deputy and full Commission erred in apportioning Claimant's award for temporary total disability and medical benefits.
It is noted that jurisdiction is reserved for the purpose of determining any permanent disability suffered by Claimant. At the hearing thereon, the Deputy should determine and make findings as to what portion, if any, of Claimant's permanent disability is apportionable. Such findings are necessary in order to preserve the employer-carrier's resort to the Special Disability Fund. See Stephens v. Winn-Dixie Stores, Inc., supra.
We also note that jurisdiction is reserved for the purpose of determining temporary total or temporary partial disability benefits due the Claimant, if any, prior to the hearing concluded May 27, 1966. An award for these benefits should adhere to the conclusions of law stated in this opinion.
The petition is denied and the cross-petition is granted. The orders of the Deputy and the full Commission are modified to this extent: in Items (2) and (4), change "50%" to read "100%" and "$21.00 per week" in item (4) to "$42.00 per week"; otherwise the said orders shall remain unchanged.
It is so ordered.
THOMAS, ROBERTS and ADAMS, JJ., concur.
CALDWELL, C.J., dissents.