564 So.2d 1190 (1990)
CRUISE QUALITY PAINTING and Cigna Insurance Companies, Appellants,
v.
James PAIGE, Tire Kingdom, and Claims Center, Appellees.
No. 89-1376.
District Court of Appeal of Florida, First District.
July 23, 1990.
*1191 Susan J. Arrick, of Marlow, Shofi, Connell, Valerius, Abrams, Lowe and Adler, Miami, for appellants.
Howard L. Wander, of Adams, Kelley, Kronenberg & Kelley, Fort Lauderdale, for appellees.
Edward A. Dion, Asst. Gen. Counsel and Mary E. Ingley, Tallahassee, for Dept. of Labor and Employment Sec., Div. of Workers' Compensation.
No separate brief filed by appellee/James Paige.
PER CURIAM.
The original opinion in this cause was withdrawn on the court's motion upon the vote of a majority of the active members of the court to consider the case en banc pursuant to Rule 9.331, Florida Rules of Appellate Procedure. Upon consideration of the opinion set forth herein, a majority of the court voted to dissolve en banc.
This is a case concerning a claimant who was involved in two compensable accidents while employed with different employers, and who was found not to have reached maximum medical improvement from the first accident at the time of the second accident. Specifically, on July 27, 1986, the claimant sustained an accident, according to the order of the judge of compensation claims, which "arose out of and in the course of employment while there was an employer/employee relationship between the Claimant and [appellant] Cruise Quality Painting." Subsequently, on March 21, 1987, claimant suffered a second accident while employed with appellee Tire Kingdom. Nevertheless, Cruise Quality Painting through its carrier at the time  Aetna Insurance Company  paid benefits to the *1192 claimant until March 18, 1989, after which date it paid no further benefits.
Thereafter, the claimant filed separate claims for injury against Cruise Quality Painting and Tire Kingdom and their respective carriers. Both claims were consolidated and heard before the judge of compensation claims. The order of the judge sets forth the parties' claims and defenses succinctly as follows:
3. The employee's claim against Cruise Quality Painting/Aetna is for compensation for the period March 19, 1988 through the date of hearing and medical benefits ... as well as retroactive authorization for these medical providers. The employee's claim against Tire Kingdom/Adjustco [Tire Kingdom's carrier at the time] is for compensation and all medical benefits, including payment of all medical expenses incurred, as well as retroactive authorization, from the date of the second accident, March 21, 1987, through the date of the hearing.
4. Pursuant to F.S. 440.20 Cruise Quality Painting/Aetna filed a reimbursement claim against Tire Kingdom/Adjustco for any and all benefits paid the claimant after March 21, 1987.
5. Cruise Quality Painting/Aetna defended upon the following basis:
a). All benefits, medical and compensation, were caused by the second accident in that the claimant returned to work, full duty, prior to the second accident and that the claimant had reached maximum medical improvement in November 1986 as opined by Dr. Manuel Porth[.]
6. Tire Kingdom/Adjustco defended upon the following basis:
a). Entitlement to a complete defense of the claim based upon Martin v. Carpenter.
b). Whatever trauma the Claimant sustained while in its employ constituted no more than a temporary exacerbation of the injury sustained while in the employ of Cruise Quality Painting and therefore any and all benefits that may be properly owed is the sole responsibility of Cruise Quality Painting/Aetna.
c). There exists no causal relationship between any need for medical care or compensation benefits and claimant's alleged accident of March 24, 1987.
d). The claimant did not sustain an injury while in its employ.
Based upon a lengthy recitation of his findings of fact relevant to the parties' claims and defenses, the judge thereafter ordered and adjudged:
1. The claimant shall be paid temporary total benefits from March 21, 1987 at the compensation rate of $270.56 based upon the average weekly wate [sic] in effect at the time of the second accident of $405.46. Cruise Quality Painting/Aetna shall contribute one-half of its applicable compensation rate of $200 towards this sum and Tire Kingdom/Adjustco shall pay the remaining balance owed the claimant. Interest shall be paid on the outstanding compensation owed. For this class of benefits Cruise Quality Painting/Aetna shall be entitled to a credit for the amount of temporary total benefits it had previously voluntarily paid.
It was also ordered that the two employers and their respective carriers were to pay "in equal amounts" the medical bills in accordance with the medical fee schedule. Additionally, Cruise Quality was found entitled to a credit from Tire Kingdom for any previous medical benefits it had paid to the health care providers after the date of claimant's second accident. The judge ordered that medical treatment shall continue and that Cruise Quality Painting and Tire Kingdom shall "equally bear the responsible and necessary medical care and treatment costs rendered by these physicians in accordance with the medical fee schedule."
Three issues have been raised by appellants Cruise Quality and its present carrier, Cigna Insurance Companies [Cruise Quality]. As its first point, Cruise Quality questions whether there was competent and substantial evidence to support the judge's order finding that claimant continued to be symptomatic subsequent to his return to *1193 work in November of 1986, that he had difficulty performing his job responsibilities through March 1987, and that based on the foregoing his condition was the result of both compensable accidents. Point II challenges the judge's "apportioning" medical and temporary benefits where claimant had not reached maximum medical improvement. Finally, in Point III Cruise Quality maintains that the judge erred in retaining jurisdiction to enter the May 12, 1989 amended order where a timely notice of appeal was filed on May 11, 1989. We affirm on all three points.
Relevant to the resolution of the issues raised in this appeal are the following findings of fact made by the judge:[1]
2. Initially, the Claimant sustained a low back injury in 1982 in an [out-of-state] industrial accident. Although the injury necessitated surgery he returned back to manual labor work for several years, without incident. Then on July 27, 1986 he fell from a second story balcony sustaining blunt trauma to his low back while working as a construction laborer installing balcony rails for Cruise Quality Painting. The claimant commenced treatment with Dr. Manual Porth who followed him through approximately March 1987, when due to complications regarding authorization he discontinued following the claimant. Attendant to this first accident Dr. Porth diagnosed a contusion and strain injury to the lower back. Although still symptomatic, Dr. Porth essentially released the claimant from further active care in November, 1986, recommending that he return on an as needed basis. No impairment rating was afforded by Dr. Porth at this time although work restrictions were imposed consisting of no lifting or climbing and no working at heights.
3. The claimant returned to work for Cruise Quality Painting engaging in essentially the same type of physical labor as before, although, the number of hours he worked was reduced due to his refraining from the heavier physical aspects of this employment. Due to his hours being cut back, he looked for new employment and ultimately was hired in February, 1987, by Tire Kingdom [appellee herein]... .
4. He worked as a tire changer for approximately one month without substantial difficulty. On or about March 19, 1987, while in the presence of his supervisor, he was carrying some tires and made an awkward move twisting his back. It was apparently near closing time therefore he did not perform any further work activities that day. That night he experienced back symptoms but returned to work the following day with low back symptoms. On the following day, a Friday, the claimant continued working with low back symptoms. He kneeled down to adjust a lift under a car and when he attempted to straighten out he was unable to move. At that point he formally requested medical treatment from his employer and never returned to the job. No medical authorization of any kind was ever given by this employer.
5. Initially, the claimant returned to Dr. Porth but he was unable to obtain authorization from either carrier accordingly Dr. Porth advised the claimant that he could not further treat him.
6. Accordingly, without an ability to obtain authorization for medical treatment the claimant sought medical treatment on his own. He came under the care of Dr. Sheldon Stein, who later, referred him to Dr. Steven Nemerofsky and Dr. Naar. Further diagnostic testing was done including M.R.I. scanning ultimately resulting in a working diagnosis of multiple herniated disks and further disk degeneration at multiple lumbar areas.
7. It was Dr. Stein's opinion that on a cumulative basis both the 1986 and 1987 industrial accidents contributed to the degenerated lumbar disk condition he observed and that it was not possible to divide or apportion exact percentages to each accident. Dr. Stein further opined that the claimant has continued to be totally disabled and that he would continue *1194 him in this status until recovery from needed back surgery.
8. Dr. Nemerofsky likewise opined that both accidents contributed to the Claimant's overall degenerated condition and that he could not apportion exact percentages of impairment between the two accidents. Dr. Nemerofsky was also of the opinion that the claimant has been totally disabled since the claimant commenced treatment with his office.
9. On the topic of apportionment Dr. Porth (who was the only physician who had the advantage of having examined the claimant before and after the second accident) basically rendered an opinion that paralleled the opinions of Dr. Stein and Nemerofsky, although he seemed more impressed with the greater trauma attendant to the first accident compared to the second accident. It was Dr. Porth's conclusion that the second accident constituted an exacerbation of the lumbar injury sustained from the first accident.
10. Dr. Silverstein, who never treated the claimant but rather performed an independent medical examination at the request of Tire Kingdom/Adjustco, basically opined that he was more impressed with that portion of the claimant's history relative to the 1982 accident rather than the more recent accidents but that in any event he would evenly apportion the post-1982 residual disability between the 1986 and 1987 accidents.
12. Finally, the Claimant testified that in his opinion he made an excellent recovery from his 1982 accident allowing him to work physical jobs on an uninterrupted basis without interference from back discomfort until the 1986 balcony fall accident. He further testified that his back continued to be minimally symptomatic following Dr. Porth's initial release in November, 1986, but that he was able to handle a substantial portion of his employment duties for Cruise Quality Painting which was a physical job. The testimony also showed that he was able to work for a few week [sic] period of time as a tire changer, certainly a physically demanding job particularly as to the back.
13. Following the second accident the claimant's low back symptoms increased to the extent that he was unable to perform any physical or work activities although the overall nature of low back symptoms remained essentially the same... .
On the topic of apportionment, the judge was of the opinion
... that based upon the medical testimony presented it is not possible to realistically or accurately apportion the claimant's current degenerative low back condition between the two employers involved in this claim. Both accidents involve the same area of the spine and similar symptoms. Under these circumstances I feel it appropriate to evenly apportion the payment of benefits between the two employers involved.
The judge specifically found that claimant had not reached maximum medical improvement from either accident.[2]
As earlier stated, in its initial point on appeal, Cruise Quality argues that the judge erred in finding (1) that claimant continued to be symptomatic subsequent to his return to work following his first accident, (2) that he had difficulty performing his job responsibilities subsequent to that accident, and (3) based on the foregoing, his condition is the result of both compensable *1195 accidents. We disagree with Cruise Quality and find there was competent and substantial evidence to support the judge's order.
As its second point on appeal, Cruise Quality questions whether the judge erred in "apportioning" medical and temporary disability benefits between the respective employers and their carriers where the claimant had not yet reached MMI from the second accident. At the hearing below, Cruise Quality defended on the basis that all benefits were warranted by the second accident. On the other hand, Tire Kingdom's defense was that "[w]hatever trauma claimant sustained while in its employ constituted no more than a temporary exacerbation of the injuries sustained while in the employ of Cruise Quality Painting and therefore any and all benefits that may be properly owed are the sole responsibility of Cruise Quality Painting... ."
Relevant to the resolution of this issue is Section 440.42(3), Florida Statutes (1987), which provides in pertinent part:
When there is any controversy as to which of two or more carriers is liable for the discharge of the obligations and duties of one or more employers with respect to a claim for compensation, remedial treatment, or other benefits under this chapter, the [judge of compensation claims] shall have jurisdiction to adjudicate such controversy; and if one of the carriers voluntarily or in compliance with a compensation order makes payments in discharge of such liability and it is finally determined that another carrier is liable for all or any part of such obligations and duties with respect to such claim, the carrier which has made payments either voluntarily or in compliance with a compensation order shall be entitled to reimbursement from the carrier finally determined liable, and the [judge of compensation claims] shall have jurisdiction to order such reimbursement... .
Cruise Quality relies on several decisions from this court in support of its position that a judge of compensation claims may not "apportion" temporary disability compensation and medical benefits until after a claimant has reached maximum medical improvement from the subsequent accident. See City of Melbourne v. Haddock, 533 So.2d 301 (Fla. 1st DCA 1988); Florida Insurance Guaranty Association v. Fibercon Industries, 491 So.2d 566 (Fla. 1st DCA 1986); Hayward Trucking, Inc. v. Aetna Insurance Co., 445 So.2d 385 (Fla. 1st DCA 1984), and after remand, 466 So.2d 437 (Fla. 1st DCA 1985). In response, Tire Kingdom points to our decision in Flagship National Bank of Broward County v. Hinkle, 479 So.2d 828 (Fla. 1st DCA 1985), on which the judge relied in making his determination. We note that the decision in Hinkle clearly affirmed the "apportionment" of medical benefits between carriers prior to the claimant's reaching MMI from either of the two compensable injuries, each of which was apparently a necessary producing cause of the medical needs (i.e., knee surgery) in question.[3] In fact; Cruise Quality recognizes as much but argues that Hinkle stands at most for the proposition that medical benefits may be apportioned prior to MMI but does not extend to temporary total disability compensation benefits. Rather, according to Cruise Quality, such temporary total benefits should remain the sole responsibility of the second carrier.
We agree with the parties that there is an apparent disparity in the interpretations of this court's opinions in the cases cited by Cruise Quality and the result reached in *1196 Hinkle.[4] However, because of the unequivocal language of Section 440.42(3), we conclude that the result reached in Hinkle is correct and to whatever extent the decisions in the cited cases, and any other cases, might appear to preclude this result, to eliminate any further confusion we hereby recede from any interpretation of those cases giving a construction of the statute contrary to this decision.
Before embarking on an analysis of this particular point, we seize the opportunity to clarify an apparent misunderstanding in terminology. Although generally referred to as "apportionment" in the many cases cited by the parties, the remedy available to carriers under section 440.42(3) is more appropriately viewed as reimbursement in the nature of contribution, but may, as well, include the allocation of responsibility or liability between the carriers for the payment of compensation due a claimant under other provisions of the law. See Seasons From Sarasota v. O'Day, 379 So.2d 1024 (Fla. 1st DCA 1980).[5] However, a subsequent employer/carrier's liability to the claimant pursuant to section 440.15(5)(a) for temporary disability and medical benefits due to a subsequent injury cannot be offset or diminished by such right to reimbursement. Thus, the remedy afforded carriers under section 440.42(3) should not be confused with substantive apportionment as that term is contemplated in section 440.15(5)(a), providing that "[c]ompensation for temporary disability, medical benefits, and wage-loss benefits shall not be subject to apportionment." (e.s.) Earlier, this precise distinction was made in Rowe & Mitchell v. Rodgers, 378 So.2d 1281, 1282 (Fla. 1st DCA 1980), where we observed that then section 440.02(18), Florida Statutes (1977), "governs issues between the employee and his employer/carrier. Disputes between carriers concerning `the obligations and duties of one or more employers,' or between self-insured employers on the same subject, are governed rather by Section 440.42(3)." (e.s.)[6]
Even earlier, in City of Lakeland v. Catinella, 129 So.2d 133 (Fla. 1961), the supreme court interpreted the 1959 version of section 440.42(3)  which, for purposes of this issue, has remained essentially unchanged to the present time  and observed:
The subject statute is in no way directly concerned with the question of the compensability of a claim or, from the claimant's standpoint, the receipt of the benefits to which he has become entitled thereby. It relates only to a controversy between two or more carriers as to which is liable for the discharge of the duties and liabilities of an employer occasioned by the compensable claim, where such *1197 matters as the claim's compensability and the awards to be made therefor have been voluntarily accepted by one of the carriers or have been already determined under other provisions of the Workmen's Compensation Act, Ch. 440, F.S.A. (e.s.)
129 So.2d at 136. Both Catinella and Russell House Movers, Inc. v. Nolin, 210 So.2d 859 (Fla. 1968), the case relied on for the inapplicability of section 440.02(18) in Rowe, make it plain that section 440.42(3) can be applied only when each of the contending employer/carriers' liability for the benefits in question has been determined under other provisions of chapter 440. Sections 440.15(5)(a), (440.02(18)) could not, of course, be directly applicable to the allocation independent of liability issues. It is equally plain from Rowe's reliance on Nolin that the opinion was not intended to preclude absolutely the consideration of section 440.15(5)(a) in disputes involving multiple carriers when the liability of any carrier on the facts as to a specific benefit requires application of that or any other provision of the statute. One of those specific facts (not present in the instant case) required by the context of section 440.15(5)(a) is that a subsequent accident must have impacted a prior permanent condition.
The ruling in Rowe should be read simply as approving allocation of medical costs on an etiological basis after liability of each carrier was determined under all applicable provisions. Rowe's allocation of medicals can thus rest on the apparent fact that both accidents were necessary producing causes of the medical need, and remedial treatment, for the first injury had apparently not been terminated by MMI prior to the second injury. Certainly that opinion, like others following it, does not expressly or implicitly rationalize any basis for confining section 440.15(5)(a) to disputes between a carrier and claimant over apportionment between a compensable injury and a noncompensable condition. The language of that section, as fully explained in Nolin (where only the claimant and second carrier were parties), may clearly apply to require a carrier on a second accident to pay the entire cost of medical care and temporary disability compensation, without recoupment or apportionment, in the ordinary circumstance of a second accident aggravating or exacerbating a previous permanent condition, compensable or otherwise.
On the other hand, as previously held by this court in City of Fernandina Beach v. School Board of Nassau County, 488 So.2d 871 (Fla. 1st DCA 1986), we have construed the statutory language of section 440.42(3) to allow the judge to order "apportionment" between carriers, i.e. in the sense of reimbursement, not only of medical benefits but of temporary disability benefits as well. Additionally, that case holds section 440.15(5) to
... require the carrier at risk at the time of the accident to either controvert the claim as noncompensable or to pay all temporary disability and medical benefits due before MMI. Section 440.42(3) then permits the carrier paying such benefits (either voluntarily or in compliance with [an] order) to seek reimbursement from another carrier found to be liable for all or part of the benefits paid. (e.s.)[7]
*1198 However, contrary to the implication attributed to City of Fernandina Beach v. School Board of Nassau County and the other cases mentioned above, nowhere in section 440.42(3) is it mandated that the judge is required to withhold ruling under that section until maximum medical improvement is reached.[8] Rather, the clear wording of the statute grants the judge jurisdiction to determine any controversy between carriers with respect to a claim for reimbursement of payments for compensation, remedial treatment, or other benefits under the chapter, at such a time when "it is finally determined that another carrier is liable for all or any part of such obligations and duties with respect to such claim." (e.s.) The operative inquiry is not one of maximum medical improvement from the subsequent injury, but of evidentiary proof of causation for temporary benefits claimed, absent a true apportionment claim for a prior permanent condition. Thus, whenever it can be finally determined that one or the other of the carriers is responsible for all or any severable part of the obligations and duties owed the claimant under the statute, the judge may resolve the controversy and order reimbursement or divide liability "upon appropriate findings of fact." Flagship National Bank of Broward County v. Hinkle, 479 So.2d at 831.
Accordingly, in Hinkle, the judge resolved conflicting medical testimony and equally divided the responsibility for medical treatment between the two employers and their respective carriers because he found claimant's condition was caused by a combination of her original accident and her subsequent compensable accident.[9] We affirmed, holding the record contained competent and substantial evidence to support this finding and award.[10] Similarly, in the instant case, we hold that the record contains competent and substantial evidence to support the division of liability between the carriers in the manner as found by the judge.[11] Accordingly, the order of the judge of compensation claims is hereby
AFFIRMED.
ERVIN and WIGGINTON, JJ., concur.
WENTWORTH, J., concurs specially with written opinion.
WENTWORTH, Judge, concurring.
I agree with the majority opinion's summary of decisions, the consequent need to qualify terminology in earlier opinions precluding any allocation between carriers under section 440.42(3) prior to MMI from a subsequent injury, and the propriety of affirming the equal allocation of TTD benefits between the carriers on the factual findings and supporting record in this case. But my affirmance is based specifically on the fact that claimant had not reached MMI from his first injury when the second accident occurred. See Tolvanen v. E.A.L., 287 So.2d 299, 301 (Fla. 1973). I believe that same circumstance, or its necessary alternative that permanent disability from the first injury could not be fixed before the second, is a proper inference in most of the numerous opinions reciting Rowe's overbroad statement that "[d]isputes between carriers ... are governed rather by Section 440.42(3)"(e.s.), and that "[s]ection *1199 440.02(18) ... was written and amended for another purpose entirely... ." The latter section was, of course, amended to end apportionment of temporary benefits between claimant and carrier, but inter-carrier disputes over liability of each for benefits and consequent reimbursement claims may be governed by that section and numerous others in addition to (not rather than) section 440.42(3). The reimbursement remedy in that section is purely procedural (see Catinella, note 6 of majority opinion) and requires a prior or contemporaneous determination of liability of each carrier for benefits to claimant.
Even after the 1979 change in location of the language from section 440.02(18) to section 440.15(5)(a), and removal of words "under this subsection," Rowe's reliance on Nolin remains appropriate. The latter opinion is clear that, even before the 1979 change in location,
the affirmative expression set out in the later enacted Section 440.02(19) should control the scope of Section 440.15(5)(c)... . [T]he two apportionment provisions were intended to have parallel applications since there seems to be no logical reason to treat pre-existing disability resulting from injury any differently from pre-existing disability resulting from disease or other congenital defect... . [T]he apportionment provision of Section 440.15(5)(c) and the reimbursement provision of Section 440.49(4)(c) are perfect equivalents and can only be applied as alternatives.
In sum, the primary problem in the language of many of the opinions on the point in question (and probably most other points argued on appeals here) is a failure to read prior decisions in strict context of the facts either recited in the opinion or properly implied to sustain the principle invoked by the opinion. Clearly the attention of both court and counsel should be so directed, and any broader application of an opinion is as much an improper reading as it is an improper writing of the opinion.
NOTES
[1] The remainder of the order discusses and rejects a Martin v. Carpenter defense raised by appellee Tire Kingdom. That ruling has not been challenged.
[2] Compare Tolvanen v. Eastern Air Lines, 287 So.2d 299 (Fla. 1973), finding in a case where MMI did not intervene that the bar to apportionment in Section 440.02(19), Florida Statutes (1969), did not prevent equal allocation between carriers of temporary disability compensation.

But cf. Simmons v. Trinity Industries, 528 So.2d 1337, 1339 (Fla. 1st DCA 1988), for the rule which has been applied when MMI from an initial compensable injury precedes a second compensable aggravating accident:
Since apportionment of claims for temporary disability, medical benefits, and wage-loss benefits is barred by statute, § 440.15(5)(a), ... [citation omitted] in this circumstance the second employer, Porter Plastics, must bear the burden of providing any temporary disability benefits to which appellant may be found to be entitled at this time, unless Porter Plastics has a viable defense to the claim.
[3] The Hinkle opinion, however, identified only in general terms the condition of the claimant requiring arthroscopic surgery as a condition "caused by her original compensable accident combined with her March 1984 accident." 479 So.2d at 831. Those words can most reasonably be understood as describing a condition for which each accident was a necessary producing cause. For that reason, and the fact that MMI did not intervene between the accidents, the decision may be reconciled with Simmons, note 2, supra. This illustrates the need for distinguishing the situation in which a second accident triggers disability which, but for that later accident, would not exist from a preexisting permanent contributing condition (compensable or otherwise).
[4] Compare also City of Fernandina Beach v. School Board of Nassau County, 488 So.2d 871 (Fla. 1st DCA 1986); and Sunlakes Realty & Construction Co. v. Taylor, 555 So.2d 1216 (Fla. 1st DCA 1989), rehearing denied February 6, 1990, which cases indicate that the judge is required to withhold ruling on apportionment until maximum medical improvement has been reached. This language may have its origin in a failure to maintain a clear distinction between simple allocation between carriers where the measure of a claimant's right to compensation is not disputed, as opposed to a true apportionment defense based on aggravation or merger under circumstances within the terms of section 440.15(5)(a), which must of course await MMI since only permanent benefits are affected. Escambia County Council on Aging v. Goldsmith, 500 So.2d 626 (Fla. 1st DCA 1986).
[5] "In the present case, the judge required the first carrier to pay for medical costs which the record indicates were attributable to the first injury independent of the subsequent injury. Such etiological responsibility comports with Rowe and Mitchell v. Rodgers, supra." 379 So.2d 1024, 1025. (emphasis in original).
[6] Recently, in Forklifts of Central Florida v. Beringer, 560 So.2d 1362 (Fla. 1st DCA 1990), at note 2, this court made the same observation, concluding that whereas section 440.42(3) provides that a carrier may be entitled to reimbursement from the carrier finally determined liable for all or any part of the obligations and duties to the claimant arising under other provisions of Chapter 440,

[t]his does not mean that a finding of MMI is a necessary prerequisite to one carrier's right to reimbursement or contribution from another carrier as to benefits for which MMI is not otherwise necessary. All that is required is that there be CSE to support a final determination of causation between carriers. [emphasis in original].
[7] The opinion in City of Fernandina Beach does not identify the facts as to the accidents and injuries in dispute, and clearly preserves all pertinent issues as to ultimate liability. However, as urged by the Department of Labor and Employment Security in its brief filed at the request of this court during its en banc consideration of the issues, it should be emphasized that any controversy under section 440.42(3) should not affect the benefits to which the claimant would be entitled. That is, the carrier on risk at the time of the second accident must pay any temporary disability and medical benefits directly to the claimant unless it chooses to controvert the claim. The department contends, and we agree, that this rule is the fairest means of assuring that the claimant receives those benefits to which he is entitled. Any dispute between carriers at risk arising by virtue of the jurisdictional mechanism and remedy provided by section 440.42(3) should not be used to delay payment of benefits otherwise due the claimant. As the department points out, practically speaking

... the claimant is often caught in the middle with each carrier denying responsibility. Early resolution of such disputes could redound to the benefit of the claimant. On the other hand, nothing would preclude the claimant from pursuing his own claim against either, or both, carriers. [Brief at p. 14.]
See also Tolvanen v. Eastern Air Lines, 287 So.2d at 301.
[8] Apportionment of permanent benefits is of course premature until MMI from the subsequent injury. Cf. cases cited note 4, supra.
[9] See note 3, supra.
[10] The judge in Hinkle had also required the second employer/carrier to be solely responsible for payment of temporary total disability benefits following the claimant's second injury. However, we expressly noted that the second employer/carrier did not appeal that portion of the judge's order and therefore we were presented with no issue regarding the responsibility for temporary total disability benefits.
[11] Under Point III, Cruise Quality argues that the judge was without jurisdiction to decide the matters addressed in his amended order entered on May 12, 1989, where the notice of appeal had been filed on May 11. We affirm his action. The amended order was merely a clarification of the appealed order.