592 So.2d 1158 (1992)
ENTENMANN's BAKERY and the Hartford Insurance Company, Appellants,
v.
Miguel NUNEZ, Appellee.
ENTENMANN'S BAKERY and Liberty Mutual Insurance Company, Appellants,
v.
Miguel NUNEZ, Appellee.
Nos. 90-3422, 90-3423.
District Court of Appeal of Florida, First District.
January 14, 1992.
Rehearing Denied March 3, 1992.
*1159 Jorge A. Pena of Reinert, Perez & Goran, P.A., Coral Gables, for appellants in No. 90-3422.
Arturo Borbolla of Miller, Kagan and Chait, P.A., Coral Gables, for appellants in No. 90-3423.
Jerold Feuer, Miami, for appellee Nunez in No. 90-3422.
Arturo Borbolla of Miller, Kagan and Chait, P.A., Coral Gables, for appellee Liberty Mut. Ins. Co. in No. 90-3422.
Jorge A. Pena of Reinert, Perez & Goran, P.A., Coral Gables, for appellee The Hartford Ins. Co. in No. 90-3423.
WENTWORTH, Senior Judge.
The appellant carriers, Liberty Mutual Insurance Company and The Hartford Group raise several issues in their separate appeals from a worker's compensation order allocating liability equally between them for all compensation benefits due or advanced by Liberty between June 20, 1988 and the June 1990 hearing. We affirm the order for payment of certain past medical and rehabilitation bills by Liberty as necessitated solely by its accidents, but reverse and remand for reconsideration of the remaining decretal portions of the order as to future rehabilitation and the award and reimbursement of compensation benefits due from June 20, 1988 through the date of hearing "and continuing" at the stipulated rate for the last accident.
The order states in material part:
The Claimant suffered serious injuries to his neck and low back due to his accidents of 1983 and 1985; .. . he cannot stand for any long period of time; and... he is unable to bend often or lift more than 25 pounds. I further find that as a result of Claimant's accident of April 2, 1988 ... he suffered injuries to his right leg and a nervous condition which he developed and is described as a serious depressive disorder. I find that after periods of disability, the Claimant returned to work after each of his accidents of October 18, 1983 and September 14, 1985. I further find that the Claimant did attempt to return to work after his accident of April 2, 1988 and he tried to continue to work until June, 1988, when he was no longer able to work due to his physical condition as well as his psychiatric problems.

The Claimant reached maximum medical improvement on April 3, 1984 based upon the testimony of Dr. Orestes Rosabal. On September 4, 1986, after the *1160 Claimant's second accident of September 14, 1985, Dr. Rosabal determined that the Claimant had reached maximum medical improvement with a Permanent Partial Disability rating of 5% to the body as a whole based upon the AMI Guide to Permanent Impairment. On November 10, 1988, Dr. Rosabal determined that the Claimant had a Permanent Partial Disability to the body as a whole of 2%. Dr. Lazaro Guerra stated that the Claimant reached maximum medical improvement on February 4, 1987 with a Permanent Partial Disability rating to the body as a whole of 7-8% based upon the AMI Guide to Permanent Impairment due to the injuries to his cervical spine and low back. According to Dr. A. Carlos Casademont the Claimant reached maximum medical improvement on September 7, 1990. Dr. Casademont was further of the opinion that the Claimant would have a permanent partial disability from a psychiatric standpoint, ... .
I accept the opinions of Dr. Casademont that the psychiatric disability is related to the accident of April 2, 1988 and is not related to the accidents of October 18, 1983 or September 14, 1985... Based upon ... findings by Dr. Dukovich, the Claimant's employment with the Employer was terminated on March 22, 1990. Dr. Dukovich testified that "this patient is not suitable to continue his regular duty and if he was put back in his regular duty he would very soon be disabled again."
I find that the Claimant tried on several occasions to return to his job at ENTENMANN'S BAKERY. Initially he attempted light duty and thereafter, his regular duties without positive results.
I find that the Claimant did conduct good faith job searches... .
G. I have carefully considered the testimony of Dr. Casademont and I accept his opinions as being consistent with the history given by the Claimant as well as all of the other medical opinions and information available to Dr. Casademont, ... . (e.s.)
The record here adequately supports the judge's findings that after June, 1988, claimant was no longer able to work due in significant part to his psychiatric disability related to Hartford's accident of April 2, 1988, and that the opinions of Dr. Casademont, including claimant's final maximum medical (psychiatric) improvement on September 7, 1990, were consistent with claimant's history. We find Hartford's contrary contentions to be without merit.
The only other issue raised by Hartford in its appeal is that the judge erred "in finding the Hartford solely responsible for the claimant's psychiatric condition." The order's finding instead is that claimant's psychiatric disability is "related to the accident of April 2, 1988." We construe that language in accord with the evidence to mean that Hartford's accident triggered the psychiatric disability, i.e., but for the latter accident the disability would not have resulted at the time it did. Under these circumstances, and in accord with the relevant statutes and decisions cited in Cruise Quality Painting v. Paige, 564 So.2d 1190 (Fla. 1st DCA 1990),[1] Hartford is solely responsible for compensation for temporary *1161 disability resulting in material part from its accident until the date of final maximum medical or psychiatric improvement.
Decisions allocating temporary benefits between carriers on successive accidents, on the basis of proportionate causal contribution, have involved continuing treatment or temporary disability from prior injuries at the time of a later accident which causes new or additional aggravating disability. See Flagship National Bank v. Hinkle, 479 So.2d 828 (Fla. 1st DCA 1985); Atkins Construction Company v. Wilson, 509 So.2d 1185 (Fla. 1st DCA 1987), rehearing denied; Sauer Industrial Contracting, Inc. and CNA Insurance v. Ditch, 547 So.2d 276 (Fla. 1st DCA 1989). No such circumstances can be gleaned from the record in the present case. Instead, the 1988 accident caused a new physical and psychiatric injury which aggravated claimant's preexisting permanent condition, in the sense that he could no longer tolerate pain from his various injuries, preexisting or otherwise, so as to continue his former employment. Representative testimony in the record of the treating psychiatrist is: "I felt that after I completed my evaluation that Mr. Nunez was suffering from a depressive disorder, and this depressive disorder was interacting with his physical complaints and making him experience pain and discomfort in a more intense way."
The record shows that none of the temporary disability here in question was caused independently by Liberty's earlier accidents apart from the last 1988 accident for which Hartford is responsible, and the order makes no such finding. The judge therefore erred in allocating to Liberty 50% of the responsibility for compensation during temporary disability caused in material part by Hartford's accident. The order further errs in attributing wage loss after October 15, 1989 to "Permanent Partial Disability," after accepting a final psychiatric MMI date of September 7, 1990. Prior to that date all disability involving claimant's compensable psychiatric condition would necessarily be temporary in character.
The foregoing conclusions dictate reversal in Liberty's favor on its first issue raised here, i.e., lack of evidence to support the judge's finding of 50% liability of Liberty for the compensation benefits advanced by it and those awarded thereafter. All such compensation was for temporary disability to which Hartford's accident contributed, and in this case any apportionment would be premature for such benefits accruing prior to September 7, 1990.
Liberty next challenges evidentiary support for the award against it for future psychiatric care and rehabilitation. As indicated above, that award must also be reversed for lack of the particular findings necessary for apportionment of permanent benefits due after the final September 7, 1990 MMI date. The order recognizes that at the time of the last (1988) accident, claimant had suffered a prior permanent impairment from injuries in the 1983 and 1985 accidents for which Liberty was carrier. But no determination was made as to whether those permanent conditions caused or were then likely to cause disability for merger purposes, or whether they contributed to claimant's need for permanent benefits *1162 independent of the physical or psychiatric injuries precipitated by the last accident.[2] We therefore reverse and remand for that determination and for application of statutory apportionment principles to the extent appropriate,[3] either on the present record or such additional evidence as may be required.
Our disposition above moots the issue by which Liberty asserts error in any award against it on the basis of a compensation rate higher than the stipulated rate for its accidents. However, we note the merit in that argument and assume that the error will be corrected in the event of an award against Liberty for any permanent benefits after a correct application of apportionment principles on remand.
Affirmed in part, reversed in part, and remanded for further consistent proceedings.
SMITH and MINER, JJ., concur.
NOTES
[1] The opinion in Cruise held that allocation of temporary benefits between carriers may be made prior to MMI where it was "found that claimant had not reached maximum medical improvement from either accident." 564 So.2d at 1194. The opinion at that point, note 2, further states with respect to a situation such as that in the present case:

2... . .
But cf. Simmons v. Trinity Industries, 528 So.2d 1337, 1339 (Fla. 1st DCA 1988), for the rule which has been applied when MMI from an initial compensable injury precedes a second compensable aggravating accident: Since apportionment of claims for temporary disability, medical benefits, and wage-loss benefits is barred by statute, § 440.15(5)(a), ... [citation omitted] in this circumstance the second employer, Porter Plastics, must bear the burden of providing any temporary disability benefits to which appellant may be found to be entitled at this time, unless Porter Plastics has a viable defense to the claim.
At page 1197 the opinion concludes that earlier cited cases relying on Russell House Movers, Inc. v. Nolin, 210 So.2d 859 (Fla. 1968), plainly were "not intended to preclude ... the consideration of section 440.15(5)(a) in disputes involving multiple carriers" when a subsequent accident has impacted a prior permanent condition. The concurring opinion recites the history of section 440.15(5)(a), formerly 440.02(18), and references Nolin's conclusion of "no logical reason to treat preexisting disability from injury any differently from pre-existing disability resulting from disease or other congenital defect." Cf. Escambia County Council on Aging v. Goldsmith, 500 So.2d 626 (Fla. 1st DCA 1986); and Evans v. Florida Industrial Commission, 196 So.2d 748 (Fla. 1967). See also Champion International v. St. Regis Paper Company, 562 So.2d 416 (Fla. 1st DCA 1990), concurring opinion at page 418, referencing Johnnie's Produce Co. v. Benedict & Jordan, 120 So.2d 12 (Fla. 1960):
There the court treated successive compensable accidents and upheld a reversal of a 50% TTD award against the first carrier because it found that MMI from the first accident and consequent restoration of earning capacity occurred before the second aggravating accident. After holding that the second accident was not the natural result of the prior compensable condition, the opinion rejected the rule on carrier "apportionment" in other states cited by Larson, confined the first carrier's liability to permanent benefits, if any, due for that accident independent of the aggravation, and limited the second carrier's remedy to that provided in the Fund provisions. [Emphasis in original.]
[2] Cf. Poston Bridge & Iron v. Newcombe, IRC order 2-3363, Feb. 22, 1978.
[3] If the judge on remand determines that claimant's permanent impairment from the earlier accidents independently caused or was likely to cause disability at the time of the last accident or award, then the statutory prescription must be applied in accordance with Evans v. Florida Industrial Commission, supra, and the numerous decisions of this court recognizing the extent to which it remains pertinent to benefits under the current law.