PER CURIAM.
Claimant Manuel Almeida is the appellant and cross-appellee in this workers’ compensation case, which involves the occurrence of two separate accidents. The judge of compensation claims (JCC) issued an order awarding Almeida wage loss benefits for the period April 23, 1992, through March 31, 1993, but offsetting the award by the amount of Almeida’s stipulated settlement with the employer’s second worker’s compensation insurer, not a party to this appeal. On appeal, claimant argues that the JCC erred in effecting the offset. On cross-appeal, the employer and its servicing agent argue that the award of wage loss benefits should be reversed on the ground that there exists no competent, substantial evidence to support the JCC’s finding that claimant’s back condition is causally related to his first industrial accident. We reverse on the cross-appeal and therefore find it unnecessary to address the offset issue.
Claimant was employed by Longleaf Forest Products to drive a truck filled with sawdust. Claimant was also to fill the truck with sawdust. On December 17,1988, claimant was loading the truck with a front-end loader when an explosion occurred. Claimant said the front-end loader exploded in “flames like you see a race car on TV hit the wall and the flames come out.” Claimant said he was partially blown off the machine and partially scrambled to get the “hell out of there.” Claimant said he “hit the ground and kind of fell in a ball.” The accident was reported to his foreman, but no accident report was filled out. Claimant began to experience pain in his lower back and legs within a couple of days, but, hoping that the pain would go away, did not see a doctor. At *1236 the time of this first accident, the workers’ compensation servicing agent was appellee Sewell, Todd, & Braxton, Inc.
Soon after the accident, the employer changed workers’ compensation insurers. Then, on December 28, 1988, claimant was loading a truck when he had to push up on the tailgate. While pushing up on the tailgate, claimant felt something “give” in his back and he fell to the ground. At the time of the tailgate incident, the employer’s workers’ compensation carrier was the Employers Self Insurance Fund.
After his encounter with the tailgate, claimant went to see a doctor. Dr. Donati saw claimant from January 17, 1989, through February 6, 1989, and diagnosed claimant’s condition as a lumbosacral strain. Claimant began to see Dr. Fulton on April 10, 1989. Fulton diagnosed claimant’s condition as “low back pain with sciatica, segmental instability of the lumbar spine and degenerative versus herniated lumbar disc disease.” Claimant gave Dr. Fulton a history of being injured when falling off the front-end loader. Fulton opined that although there may have been a preexisting component to claimant’s back condition, claimant’s symptoms were precipitated by and causally related to his fall of December 17. Dr. Fulton opined that claimant attained MMI on November 28, 1989, with a 15% permanent impairment rating. When informed about the tailgate incident, however, Dr. Fulton admitted that he could not discern whether claimant’s symptoms were caused by his fall from the front-end loader or the tailgate incident.
Claimant consulted with Dr. Dinkla in January of 1992. Dr. Dinkla also admitted of no way of knowing whether claimant’s symptoms were caused by his fall from the front-end loader or the tailgate incident. An independent medical examination was performed by Dr. Broom in January of 1993. He, too, could not state whether claimant’s symptoms were caused by the first or second accident. Unlike Dr. Fulton, however, Dr. Broom opined that claimant had not yet reached MMI as of January 20, 1993.
On April 22, 1992, claimant entered into a settlement agreement with the employer and Employers Self Insurance Fund, the carrier at the time of the second accident. The “washout” settlement agreement refers only to the December 28, 1988, date of accident, where claimant lifted a tailgate, aggravating a prior back injury. Claimant received a settlement of $46,000. Under the terms of the settlement agreement, claimant released the employer and the second carrier from, inter alia, any further liability for wage loss benefits attributable to the second accident.
On May 29, 1992, claimant filed the present claim for wage loss benefits. Among other things, the JCC found that there existed competent, substantial evidence to support the conclusion that claimant’s wage loss for the period April 23, 1992, through March 31, 1993, was causally related to his fall of December 17, 1988. The JCC therefore awarded benefits for that period. However, in order to prevent a windfall for the claimant, the JCC allowed the servicing agent to take an offset of $46,000 against past and future permanent indemnity benefits (i.e., wage loss benefits and permanent total disability benefits, if claimant is ever determined to be permanently and totally disabled).
We agree with the cross-appellants’ contention that the award of wage loss benefits is not supported by competent, substantial evidence. The tenor of the JCC’s order is such that it fails to precisely focus on what claimant was required to prove at the hearing below. Wage loss benefits are not awarded upon a mere finding of compensable injury. Rather, wage loss benefits are awarded upon a finding of diminished earning capacity attributable to a work related physical limitation. § 440.15(3)(b) and (4)(a), Florida Statutes (1987); Church’s Fried Chicken v. Maloney, 599 So.2d 706, 708 (Fla. 1st DCA 1992); Nowicki v. St Petersburg Kennel Club, 558 So.2d 181, 182 (Fla. 1st DCA 1990); Parker v. Eaton, 554 So.2d 644, 647 (Fla. 1st DCA 1989). The washout settlement with the second carrier and the employer foreclosed any claim against the employer and second carrier for future wage *1237 loss attributable to the second accident.[1] The claimant therefore, perhaps unwittingly, imposed upon himself the burden of proving that he suffered a diminished earning capacity during the period in question attributable in material part to physical limitation suffered upon the first accident. See Enten-mann’s Bakery v. Nunez, 592 So.2d 1158, 1160-61 (Fla. 1st DCA 1992). Under ordinary circumstances, the JCC’s excusal of the job search requirement may have been sufficient to demonstrate wage loss. Under the present circumstances, however, such excusal is inadequate to support an award of wage loss benefits because claimant was put to a more stringent theory of recovery. Claimant was required to prove that he suffered a diminished earning capacity resulting in material part from his first accident. Id. In theory, it is conceivable that a claimant could show that he suffered certain injuries on a specific date, and additional injuries and physical limitations upon a subsequent aggravation of the original injury. It follows, then, that a claimant could show that wage loss was attributable both to the aggravation and also to the original injury. That is not what happened in this ease, however. Claimant was unable to demonstrate that his wage loss was in material part attributable to the first accident. In fact, claimant did not even attempt to make such a proof. None of the physicians who examined and treated claimant expressed an opinion as to whether any of claimant’s injuries and physical limitations were attributable to the first accident. Of course, this insufficiency of proof may be due in part to the fact that claimant did not see a physician until after the second accident, and did not produce a retrospective medical opinion on the critical issue. Claimant’s failure to demonstrate that his injuries and physical limitations were attributable in material part to the first accident compels the conclusion that the award of wage loss benefits is not supported by competent, substantial evidence.
REVERSED.
MINER and LAWRENCE, JJ., concur.
BENTON, J., concurs in result only.

. This appeal does not present an apportionment of liability contest between the two carriers, since the liability of the second carrier has been resolved by settlement agreement. Rather, we are presented with a liability contest between the claimant and the first carrier. As such, we find this case distinguishable from Tolvanen v. Eastern Airlines, 287 So.2d 299 (Fla.1973) (finding apportionment between first and second carrier proper).