BENTON, Judge.
The present case turns on the sometimes elusive distinction between a “repetitive trauma injury” and an “occupational disease” as defined by section 440.151, Florida Statutes (1991). At issue is the extent of the liability of Associated Industries Insurance Company, Inc. (AIIC) for workers’ compensation benefits Federal Insurance Company (Chubb) has paid to or on behalf of Lori Ann Heinley. AIIC appeals an order determining that AIIC is “responsible for all benefits due to the injured employee after August 2, 1992.” We reverse and remand for further proceedings.
Ms. Heinley’s own entitlement to medical and temporary indemnity benefits after August 2, 1992, on account of the carpal tunnel syndrome that developed in the course and scope of her employment with Burton Manufacturing Company, Inc. (Burton) is not in contention here.
On August 1, 1992, AIIC succeeded Chubb as Burton’s workers’ compensation insurance carrier. Chubb had been on the risk as the workers’ compensation insurance carrier for Burton when Ms. Heinley filed a prior claim *882 for workers’ compensation benefits in 1991, alleging carpal tunnel syndrome. The order now under review found that the “status of this particular [1991] claim is not known.” (Ms. Heinley testified that the claim was denied on grounds her condition was not job related.)
Ms. Heinley later filed another notice of injury alleging carpal tunnel syndrome, this time alleging a date of accident of August 3, 1992. Seeking to shift liability to Chubb, AIIC initiated the present proceedings by filing a motion for contribution, reimbursement, and/or exoneration under section 440.42(3), Florida Statutes (1991), denying any responsibility for payment of Ms. Hem-ley’s workers’ compensation benefits. “Although Section 440.15(5)(a) bars apportionment of temporary disability, medical, and wage loss benefits between a claimant and an employer/camer, it does not apply to liability disputes between carriers.” Hayward Trucking, Inc. v. Aetna Ins. Co., 466 So.2d 437, 439 (Fla. 1st DCA 1985).
Having eventually paid Ms. Heinley medical and indemnity benefits, section 440.15(5)(a), Florida Statutes (1991), notwithstanding, Chubb filed a cross petition seeking contribution from AIIC. It alleged that AIIC was responsible for all benefits because AIIC was on the risk on the last day Ms. Heinley was “injuriously exposed to the hazards of [what Chubb alleged was an occupational] disease.” § 440.151(5), Fla. Stat. (1991).
While conceding that repetitive trauma at work had caused Ms. Heinley’s condition, and that apportionment might be appropriate, AIIC denied Chubb’s assertion that carpal tunnel syndrome was an “occupational disease” within the meaning of section 440.151, Florida Statutes (1991), liability for , which would fall on AIIC alone. The judge of compensation claims ruled for Chubb, finding carpal tunnel syndrome to be an “occupational disease.”
The statute defines the phrase “occupational disease” by providing that it
shall be construed to mean only a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process, or .employment, and to exclude all ordinary diseases of life to which the general public is exposed, unless the incidence of the disease is substantially higher in the particular trade, occupation, process, or employment than for the general public.
§ 440.151(2), Fla. Stat. (1991). There has been no contention that carpal tunnel syndrome should not be classified as a “disease.”
As the court made clear in Aetna Life & Casualty Co. v. Schmitt, 597 So.2d 938, 939 (Fla. 1st DCA 1992), citing Tokyo House, Inc. v. Hsin Chu, 597 So.2d 348 (Fla. 1st DCA 1992), recovery by one workers’ compensation insurance carrier from another such carrier may depend on whether an employee’s disability is attributed to an occupational disease, instead of to repeated trauma or exposure to deleterious substances in the work place:
[E]mployer/carrier responsibility for occupational disease and employer/carrier responsibility for multiple repeated accidents under the repeated trauma/exposure rationale are separate and distinct. In the latter category, in appropriate cases, assuming the presence of different insurance carriers, permanent disability benefits may be apportioned between carriers. In occupational disease eases, however, permanent disability benefits are never apportionable, because the last injurious exposure rule places liability upon the carrier at risk when the employee was last injuriously exposed to the hazards of the disease. Further, upon appropriate proof in repeated trauma cases, there can be allocation of temporary benefits between carriers. Entenmann’s Bakery v. Nunez, 592 So.2d 1158 (Fla. 1st DCA 1992).
The burden to prove that the disability or infirmity was in fact the product of an occupational disease rests, in any such controversy, on the proponent of the view that the injured worker’s disability is attributable to an occupational disease. While causation is not in dispute here, we conclude that Chubb failed to meet its burden to prove that carpal tunnel syndrome is an occupational disease.
Judge Ervin explained the difference between occupational disease and repetitive trauma or exposure in Lake v. Irwin Yacht & *883 Marine Corp., 398 So.2d 902, 903-04 (Fla. 1st DCA 1981):
As to exposure, in Festa v. Teleflex, [382 So.2d 122, 124 (Fla. 1st DCA 1980)1 we established a three pronged test: (1) The claimant must have had a prolonged exposure; (2) a causal relationship must be established between the exposure and the injury or aggravation; and (3) claimant must establish that he or she has been subject to a hazard greater than that to which the general public is exposed. We have also recently announced in Broward Industrial Plating, Inc. v. Weiby, 394 So.2d 1117 (Fla. 1st DCA 1981), a four-factor test that must be proven by the claimant before he or she can recover for an occupational disease:
(1) the disease must be actually caused by employment conditions that are characteristic of and peculiar to a particular occupation;
(2) the disease must be actually contracted during employment in the particular occupation;
(3) the occupation must present a particular hazard of the disease occurring so as to distinguish that occupation from usual occupations, or the incidence of the disease must be substantially higher in the occupation than in usual occupations; and
(4) if the disease is an ordinary disease of life, the incidence of such a disease must be substantially higher in the particular occupation than in the general public.
The evidence in the present case was insufficient to establish that the incidence of carpal tunnel syndrome was “substantially higher in the particular occupation than in the general public.”
The judge of compensation claims relied, in finding an occupational disease in the present case, on the testimony of three witnesses, including the claimant, who testified that one co-worker underwent surgery to correct carpal tunnel syndrome and another quit work because of tendonitis. The other two witnesses on this point were physicians, Drs. Watts and Hodnett.
Dr. Watts, the surgeon who performed Ms. Heinley’s carpal tunnel releases, assented when asked if he “would expect” a higher incidence of carpal tunnel syndrome among people doing repetitive “factory type” work than among “other types of occupations in the general employment sector of Ft. Walton Beach area” or among the general population in the area. On cross-examination, he conceded he had seen no statistics confirming his impressions.
Dr. Hodnett, a partner of Dr. Watts, testified that he had “noted that she worked at Burton Manufacturing where they used their hands a lot and where I had previously noted that the nature of the work was one that where there was an increased instance [sic] of carpal tunnel syndrome occurring.” He described the Burton employees as “a little more prone to [carpal tunnel syndrome], I think.”
This equivocal, anecdotal testimony falls short of what is required to establish, within a reasonable medical probability, morbidity among employees in a particular occupation that is “substantially” in excess of what the general population experiences. See Schmitt, 597 So.2d at 940 (holding employee with carpal tunnel syndrome “suffered from repeated trauma”); Simon Sez, Inc. v. Ferrer, 567 So.2d 51 (Fla. 1st DCA 1990)(finding treating physician’s testimony insufficient to prove that carpal tunnel syndrome is an occupational disease). See generally Festa v. Teleflex, 382 So.2d 122 (Fla. 1st DCA 1980). The finding in the present case that carpal tunnel syndrome is an “occupational disease” for persons in Ms. Heinley’s occupation lacks the requisite record support.
Her malady must, therefore, be attributed to repetitive trauma. Where repetitive trauma or exposure suffered in the course and scope of employment results in injury, section 440.42(3), Florida Statutes (1991), confers authority on the judge of compensation claims to apportion medical benefits “in situations involving a dispute between two carriers.” Flagship Nat’l Bank of Broward County v. Hinkle, 479 So.2d 828, 830 (Fla. 1st DCA 1985). See Neff v. Britto, 404 So.2d 416, 417 (Fla. 1st DCA 1981). In these circumstances, moreover, “there can be alio- *884 cation of temporary benefits between carriers.” Schmitt, 597 So.2d at 939. See Roz Fischer’s Beauty Unlimited v. Mathis, 644 So.2d 127, 129 (Fla. 1st DCA 1994)(holding that subsection 440.42(3) vests the judge of compensation claims with jurisdiction to allocate liability for temporary benefits among carriers in a carpal tunnel syndrome case); Nunez, 592 So.2d 1158; Cruise Quality Painting v. Paige, 564 So.2d 1190, 1195-1196 (Fla. 1st DCA 1990); City of Fernandina Beach v. School Bd. of Nassau County, 488 So.2d 871, 872 (Fla. 1st DCA 1986)(disap-proving “language” to the effect that apportionment was improper in Structural Systems, Inc. v. Worthen, 463 So.2d 502, 505 (Fla. 1st DCA 1985), as “erroneous and totally unnecessary to the result in Structural Systems," and declaring that the language “should be disregarded”).
Accordingly, the order under review is reversed and the case is remanded for further proceedings consistent with this opinion.
BOOTH and PADOVANO, JJ., concur.