449 So.2d 874 (1984)
RONALD ALLEN TRUCKING COMPANY and Utica Mutual Insurance Company, Appellants,
v.
James E. HELTON, Appellee.
No. AS-65.
District Court of Appeal of Florida, First District.
March 30, 1984.
Rehearing Denied May 23, 1984.
*875 Margaret E. Sojourner of Haas, Boehm, Brown, Ridgon & Seacrest, Orlando, for appellants.
Jesse F. Sparks, Orlando, for appellee.
THOMPSON, Judge.
The employer/carrier (E/C) appeal from a workers' compensation order awarding permanent total disability (PTD) benefits. We agree with the E/C's contention that claimant should not have been awarded PTD benefits, and reverse.
Claimant is a 43-year-old man with a sixth grade education whose work experience has been limited to truck driving and other types of fairly strenuous physical labor. Shortly after claimant's October 27, 1980 compensable cervical spine injury, he came under the care of Dr. Gilmer, an orthopedic surgeon. Although Dr. Gilmer initially felt that the claimant had an insignificant shoulder injury, he soon suspected cervical radiculopathy and recommended that claimant undergo EMG and myelographic studies. Claimant, citing a fear of needles and a prior bad experience with a myelogram, refused the recommended tests. Dr. Gilmer thereafter treated the claimant conservatively and prescribed an extensive program of physical therapy. On two occasions while under the care of Dr. Gilmer, claimant attempted to return to work for the employer, but was unable to handle his usual duties.
In May of 1981 the E/C engaged a rehabilitation firm to assist claimant in finding less strenuous work. Both Dr. Gilmer and the rehabilitation counselors repeatedly urged claimant to undergo myelographic testing, but he remained adamant in his refusal. Because of the claimant's continuing refusal to undergo testing, Dr. Gilmer reported in August 1981 that claimant had reached maximum medical improvement (MMI) and had a permanent impairment of the body as a whole of 20 percent. Dr. Gilmer attributed 5 percent of claimant's impairment to the industrial accident, and 15 percent of his impairment to claimant's preexisting degenerative arthritis. He recommended that claimant not engage in heavy labor and not return to his job as a truck driver.
In March 1982, the claimant came under the care of Dr. Zilioli, another orthopedic surgeon. Dr. Zilioli also recommended EMG and myelographic studies, but claimant continued to refuse such testing. Dr. Zilioli, like Dr. Gilmer, felt that unless claimant was willing to undergo testing and subsequent surgery should the tests indicate a need for surgery, claimant had reached MMI. In June 1982, he reported that claimant had reached MMI with an overall permanent impairment of 12 percent, 7 percent of which he attributed to the industrial accident. Dr. Zilioli felt that claimant could do "light work ... within the limits of his own tolerance," but advised claimant not to attempt to lift objects weighing in excess of 50 pounds and not to *876 attempt to return to work as a truck driver. He further advised that claimant should not seek employment requiring overhead work or the climbing of ladders or scaffolds.
In the meantime, in May 1982, claimant obtained work as a security guard at a citrus processing plant. The job required that claimant make a walking tour of the plant every other hour. The tour involved a walk of about one mile, and the climbing of two short flights of stairs. The alternate hours were to be spent in the guard's booth at the plant entrance. Claimant quit this job after working only two days. After being apprised of the duties involved in the security guard position, both Dr. Gilmer and Dr. Zilioli testified that these duties were well within claimant's capacity to perform. In June 1982, the rehabilitation firm discontinued efforts to assist claimant in finding employment, and claimant made no further effort to seek work until October 1982. His work search after that time consisted only of two visits to the Florida State Employment Service.
In the order awarding PTD benefits, the deputy commissioner found that claimant was in severe pain, was not malingering, was justified in refusing myelography, and was justified in not attempting to seek work during the summer of 1982. These findings were based on claimant's testimony as to his pain and limitations, and on the deputy's personal observation of the claimant. However, claimant's testimony was not corroborated by the medical evidence, all of which showed that claimant was physically capable of performing at least light work and could perform the security guard job he quit after only two days. Claimant's accident occurred after August 1, 1979, and neither the claimant's testimony concerning his pain and limitations, which was not supported by the medical evidence, nor the deputy's observations, constituted competent substantial evidence to support the finding that claimant is PTD. Frank's Fine Meats v. Sherman, 443 So.2d 1055 (Fla. 1st DCA 1984) [9 FLW 148].
As this court pointed out in Regency Inn v. Johnson, 422 So.2d 870, 873 (Fla. 1st DCA 1982), pet. for rev. den. 431 So.2d 989 (Fla. 1983), in order to establish PTD as a result of injuries occurring August 1, 1979 or thereafter:
"the burden shall be upon the employee to establish that he is not able uninterruptedly to ... work due to physical limitations," and no compensation of that character shall be payable "if the employee .. . is physically capable of ... gainful employment." (emphasis in original)
This reflects the very substantial changes in the criteria for a finding of permanent total disability which were brought about by the 1979 amendments to § 440.15(1), Fla. Stat. The award of PTD benefits is reversed.
In view of the reversal of the award of PTD benefits, the award of attorney's fees to claimant's attorney for services rendered in prosecuting the PTD claim is also reversed.
SHIVERS and JOANOS, JJ., concur.