SHIVERS, Judge.
National T.V. Rental, Inc. appeals from the deputy commissioner’s (DC’s) order awarding claimant temporary total disability benefits, nursing care, and permanent total disability benefits. We find the following issues need discussion: (1) whether the DC erred in awarding claimant temporary total disability benefits from July 1, 1981, to December 3, 1983; (2) whether competent substantial evidence supports the DC’s award of nursing care; (3) whether the DC misconstrued the legal import of the evidence in finding claimant was permanently and totally disabled; (4) whether the DC committed error in directing the payment of bills not in evidence. Because we find these issues have merit, we reverse and remand as to such issues.
On July 1, 1981, while working for National T.V. Rental, Inc., claimant Gregory Scott Williams injured his back while lifting a television. Claimant’s back problems have necessitated the care of various physicians, as well as his hospitalization. One of claimant’s doctors, Dr. White, concluded that claimant suffered from a herniated disc as a result of his industrial accident. Dr. White referred claimant to Dr. Ticktin, a neurosurgeon, for treatment and, if necessary, surgery. Dr. White also referred claimant to Dr. Stillman, a psychiatrist, for treatment of his psychiatric problems.
We first address the question of whether the DC erred in awarding tempo *910 rary total disability benefits from July 1, 1981, to December 3,1983. The DC’s order directs the payment of temporary total disability benefits from the date of the accident to the date of maximum medical improvement. The record indicates that the carrier made temporary total disability benefits from July 1, 1981, to April or May, 1982. Claimant, however, worked from July 12,1982, through October 3,1983, and beyond at regular employment paying substantial wages. Thus, the award of temporary total disability compensation is not in accordance with the facts and must be reversed. See Indian River Community College v. Chesser, 415 So.2d 881 (Fla. 1st DCA 1982).
We next address the question of whether competent substantial evidence supports the DC’s award of nursing care. Claimant concedes that the testimony of Dr. Stillman, which formed the basis of the DC’s award of attendant care, was never put into evidence, and thus, any determination based solely upon Dr. Stillman’s testimony was error. We agree, and reverse and remand with instructions to the DC to vacate the award of fulltime attendant care and enter an order based upon the evidence.
The employer/carrier’s next allegation of error is that the DC misconstrued the legal import of the evidence before him in finding claimant was permanently and totally disabled. We agree with the employer/carrier’s contention and reverse. Competent substantial evidence did not support the DC’s award of permanent total disability benefits because the only medical testimony which claimant offered as to his personal disability was that of Dr. Harve-Michael White, who was unaware, as he testified, that claimant had resumed work at J. Byrons within a year of his injury.
In order to establish permanent total disability (PTD) as a result of injuries occurring after the 1979 amendments of Chapter 440, the claimant must shoulder the burden of establishing that he is not able to uninterruptedly work due to physical limitations, and no PTD benefits shall be payable if claimant is physically capable of gainful employment. 440.15(1)(b), Florida Statutes (1985); Ronald Allen Trucking Co. v. Helton, 449 So.2d 874 (Fla. 1st DCA 1984). Dr. White testified at a deposition in February of 1983, that claimant could not work. Dr. White noted his testimony that claimant would have difficulty doing anything involving lifting, bending, stooping, sitting, or walking. Dr. White also observed that claimant couldn’t stand or walk, and that he had difficulty concentrating because of the pain medication he was taking. At a later hearing, claimant revealed that on July 12, 1982—scarcely a year after the date of his injury—he began working at J. Byrons, where he put in from twenty to forty hours per week as a warehouse supervisor managing personnel and doing minor paper work. Claimant continued to work at J. Byrons until November of 1984. Thus, claimant’s own testimony reveals he was capable of gainful employment, and claimant cites no evidence, other than the testimony of Dr. White, which demonstrates that he was permanently disabled. If follows that claimant did not meet his burden of proving that he was not able to uninteruptedly do even light work due to his physical limitations, and that the DC’s award of permanent total disability benefits was therefore erroneous.
We also find that the DC erred in directing the payment of medical bills not in evidence. The DC, in his final order, instructed the employer/carrier to pay the “Visiting Nurses Association for the nursing services provided by various registered nurses and attendants of that group to Claimant....” The employer/carrier stresses that there is no testimony or other evidence in the record to prove that any “Visiting Nurses’ Association” actually provided claimant with nursing care. We agree, and reverse the DC’s order insofar as it directs the employer/carrier to pay for the association’s services.
The employer/carrier next argues that another one of claimant’s treating physicians, Dr. Azar, was unable to recall his bills at his deposition, and that therefore, the DC incorrectly ordered it to pay these bills. While we feel that the record con *911 tains ample evidence that Dr. Azar sufficiently recalled the services he rendered claimant, and that the need for these services was connected to claimant’s industrial accident, we nevertheless remand this issue to the DC with instructions to enter an order based on the evidence. Dr. Azar testified that of the $630 bill he charged claimant for his services, he had received payment for only $350. It is unclear from the DC’s order whether the DC, in ordering the employer/carrier to pay Dr. Azar for his services, took into account that part of Dr. Azar’s bill which had already been paid. The final order directs the employer/carrier to pay the medical bill of Dr. Azar and the hospital bill of Miami General Hospital in the sum of $2,641.95. We accordingly remand this question to the DC with directions that the employer/carrier not be required to pay any more of Dr. Azar’s bill than whatever balance remains on it.
We have examined employer/carrier’s other allegations of error, find them to be without merit, and affirm the DC as to these issues.
AFFIRMED in part and REVERSED and REMANDED in part.
JOANOS and THOMPSON, JJ., concur.