605 So.2d 938 (1992)
ARIZONA CHEMICAL CORPORATION, et al., Appellants/Cross appellees,
v.
James HANLON, Appellee/Cross appellant.
No. 92-42.
District Court of Appeal of Florida, First District.
September 25, 1992.
Rehearing Denied November 5, 1992.
*939 M. Kemmerly Thomas, McConnaughhay, Roland, Maida, Cherr & McCranie, P.A., Tallahassee, for appellants.
Jerold Feuer, Miami, and Daniel S. Dearing, Tallahassee, for appellee.
PER CURIAM.
In this worker's compensation case, appellants Arizona Chemical Corporation and The Kemper Group appeal the order of the JCC: (1) finding claimant James L. Hanlon not permanently and totally disabled; (2) denying appellants' claim that biodetoxification treatment is experimental and thus not compensable; (3) awarding continuing care and treatment from Dr. Merrill who is authorized to refer claimant to Dr. Lieberman for further biodetoxification treatment as needed; (4) awarding payment for past biodetoxification treatments and associated traveling expenses; and, (5) awarding payment for purchase and installation of a home sauna (hot tub) prescribed by Dr. Lieberman. On cross appeal, claimant argues that the JCC erred in failing to award permanent total disability (PTD) and wage loss benefits. We affirm the JCC's order in all respects.
At the hearing on appellee's claim, testimony was taken establishing that claimant suffered long term exposure to numerous toxic chemicals, most notably, diazomethane, during the course of his employment with Sylvachem Corporation, predecessor in interest to appellant Arizona Chemical Corporation. In particular, claimant suffered direct exposure to diazomethane in August, 1977, when a bottle containing no more than four ounces of the extremely toxic compound exploded in the lab refrigerator. Claimant was told to clean up the spill and did so without the use of protective gloves, using a sponge and pan before washing the area with tap water. Shortly thereafter, claimant began to suffer swelling of the face and extremities, dizziness, watery eyes, difficulty breathing, and severe headaches. On December 2, 1986, while "shooting" gas chromatograph tests in the production lab, claimant sustained a massive exposure to diazomethane in its gaseous state. Due to a defect in a ventilation hood, the diazomethane gas was not vented from the work room, but merely recirculated into the room. Although the highly toxic gas has a strong odor, claimant could not smell the gas because his olfactory sense had been damaged from prior exposure. New symptoms appeared, including hyperglycemia, aggravated thirst, nodes in the groin area, kidney and prostate complaints, and recurring fever. In time, claimant's condition worsened further, *940 and claimant developed symptoms such as memory loss, aggression, depression, sleeplessness, myalgia, and skin sensitivity so extreme that he could not wear any clothing at times.
The employer/carrier (e/c) accepted claimant's condition as compensable, stipulating to the date of accident  December 2, 1986, date of maximum medical improvement  March 5, 1991, and maximum psychological improvement  July 5, 1991.
After treatment by several physicians authorized by the e/c, claimant requested treatment by Dr. Lieberman in Charleston, South Carolina. After inquiry, claimant's authorized physician, Dr. Merrill also recommended treatment by Dr. Lieberman and set up an appointment for claimant. Claimant sought authorization from the e/c to see Dr. Lieberman, but authorization was denied on the ground that alternative treatment was available in Florida. Dr. Lieberman operates a biodetoxification program which consists of supervised exercise, dry sauna heat therapy, nutritional support, and an individual maintenance program. The program works in three ways: mobilization of toxic contaminants from their storage sites within the body; enhancement of the body's natural methods of detoxification; and promotion of excretion or elimination of the contaminants from the body.
On March 10, 1988, the e/c controverted the claim for worker's compensation benefits, and temporary total disability (TTD) benefits were discontinued. In September, 1988, however, the e/c reinstated such benefits effective March 10, 1988. The e/c also paid the outstanding medical bills of Dr. Lieberman and authorized claimant's attendance at a subsequent treatment session. The e/c, however, refused to authorize payment for a home sauna prescribed by Dr. Lieberman. Despite Dr. Merrill's recommendation, the e/c in May, 1991, refused to authorize funds for another biodetoxification procedure on the ground that it was experimental.
Neuropsychological testing revealed that claimant suffers from impaired brain function, particularly of the right hemisphere of the brain which controls higher mental processes such as memory and abstract reasoning. Claimant's maximum attention span is probably one half hour, and when under stress, probably no more than ten minutes. Despite his mental impairment, claimant was elected to the Gulf County School Board in 1984, and again in 1988. At the time of the hearing, claimant held the position of Chairman of the School Board, a position for which he is paid $1,000.00 per month. In this capacity claimant is required to work approximately ten hours per week, nine months per year.
On appeal, appellants' various arguments center on their contentions that biodetoxification treatment is experimental, that such experimental treatment is not compensable under Florida's workers' compensation law unless approved on a case by case basis by the Division of Workers' Compensation, and that the JCC lacked subject matter jurisdiction to determine whether biodetoxification treatment is experimental.
Florida's Workers' Compensation Act requires that the employer furnish such medically necessary treatment, care and attendance by a health care provider for such period as the recovery process may require. § 440.13(2)(a), Fla. Stat. (1991). Section 440.13(1)(d), Florida Statutes (1991), provides that:
"Medically necessary" means any service or supply used to identify or treat an illness or injury which is appropriate to the patient's diagnosis, consistent with the location of service and with the level of care provided. The service should be widely accepted by the practicing peer group, should be based on scientific criteria, and should be determined to be reasonably safe. The service may not be of an experimental, investigative, or research nature, except in those instances in which prior approval of the division has been obtained. The division shall promulgate rules providing for such approval on a case-by-case basis when the procedure is shown to have significant benefits to the recovery and well-being of the patient.
*941 Pursuant to the statute, the Division has promulgated Florida Administrative Code Rule 38F-7.0201 which states:
(3) The employer/carrier shall refer to the Division requests for any services, procedures, drugs, equipment and supplies which it has reason to believe should be considered as either experimental, investigative or of a research nature. (e.s.).
(4) Approval will not be granted and payment may not be made for those services ... classified by the Division as experimental. (e.s.).
If an e/c wishes to controvert a claim for medical treatment on the ground that such treatment is experimental and thus not compensable, the e/c must refer the request for treatment to the Division of Workers' Compensation. In the present case, although claimant first went to see Dr. Lieberman in January of 1987 and first underwent biodetoxification treatment in January of 1989, the e/c did not controvert the claim on the specific ground that the treatment was experimental until May of 1991. Thus, in failing to contest the experimental nature of the biodetoxification treatment until the claim came before the judge of compensation claims, the e/c waived the right to raise the issue in this proceeding. Cf. Wolk v. Jaylen Homes, Inc., 593 So.2d 1058 (Fla. 1st DCA 1992). In light of the e/c's failure to properly raise the question of the experimental nature of the proposed treatment, the JCC properly awarded payment for claimant's biodetoxification treatment and associated travel expenses and home sauna.
In the cross appeal, claimant first argues that the JCC erred in denying PTD benefits. In order to establish permanent total disability the claimant must shoulder the burden of establishing that he is not able to uninterruptedly work due to physical limitations, and no PTD benefits shall be payable if claimant is physically capable of gainful employment. National T.V. Rental, Inc. v. Williams, 522 So.2d 909 (Fla. 1st DCA 1988) (citing § 440.15(1)(b), Florida Statutes (1985); Ronald Allen Trucking Co. v. Helton, 449 So.2d 874 (Fla. 1st DCA 1984)). In the present case, although substantial medical testimony was presented to support the claim that claimant is not able to uninterruptedly work due to physical limitations, claimant's gainful "employment" with the Gulf County School Board precludes a finding of PTD. Nor does claimant's position qualify as sheltered employment such as would allow the award of PTD benefits to one engaged in such employment.
Appellee's claim that the JCC erred in failing to award wage loss benefits is without merit as claimant did not file a claim for wage loss benefits and failed to perform a work search after notification of his obligation to do so.
AFFIRMED.
SHIVERS, MINER and ALLEN, JJ., concur.