642 So.2d 603 (1994)
ATLAS VAN LINES and Alexsis, Inc., Appellants,
v.
Charles JACKSON and Inland Construction Company and CNA Insurance, Appellees.
No. 93-762.
District Court of Appeal of Florida, First District.
September 7, 1994.
*604 Mathew D. Staver and Pamela J. Cox of Staver and Associates, Orlando, for appellants.
Gavin D. Lee of Gavin D. Lee, P.A., Maitland, for appellee Charles Jackson.
Wendell J. Kiser of Zimmerman, Shuffield, Kiser & Sutcliffe, P.A., Orlando, for appellees Inland Const. and CNA Ins.
BENTON, Judge.
In this workers' compensation case, Atlas Van Lines (Atlas) and Alexsis, Inc., its insurance carrier, appeal an order of the judge of compensation claims requiring them to pay the claimant's orthopedic expenses, even now that he has recovered as fully as possible from his most recent injury. Atlas and its insurer accepted responsibility when Mr. Jackson, an employee who had been injured in an earlier industrial accident while working for another employer, was again injured, this time out of and in the course of his employment at Atlas. The judge of compensation claims identified the second accident as the main cause of the claimant's present disability. Because this conclusion lacks substantial support in the evidence, we reverse the order under review.
Charles Jackson suffered his original compensable back injury in November of 1982, while employed by Inland Construction Company (Inland). Under a settlement agreement, Inland and its carrier, CNA Insurance, paid Jackson a lump sum in lieu of periodic compensation benefits; and Inland and CNA agreed to pay for any orthopedic or psychiatric care he might need, on account of his injury. When the claimant reached maximum medical improvement from this injury, on September 17, 1985, he still had a five to ten percent permanent impairment of the body as a whole.
Beginning in July of 1985, Dr. Stephen Oh, a psychiatrist, treated Jackson for depression attributed to the 1982 accident, and he was still treating him at the time of Dr. Oh's deposition in November of 1992. Dr. Oh testified that Mr. Jackson's overall psychiatric condition and the course of his treatment did not change after the second accident. Inland and CNA do not dispute their continued obligation to pay for this psychiatric care.
But Inland and CNA have not voluntarily paid for any orthopedic treatment since the second accident, which took place on September 27, 1990. See generally Entenmann's Bakery v. Nunez, 592 So.2d 1158 (Fla. 1st DCA 1992); Cruise Quality Painting v. Paige, 564 So.2d 1190 (Fla. 1st DCA 1990). At his deposition in October of 1992, Dr. Zilioli, an orthopedist who has treated Mr. Jackson since his first injury, testified that he reached maximum medical improvement from the effects of the second accident on January 19, 1992, with no permanent impairment, restrictions, or disability associated with the second accident; and that Mr. Jackson returned on that date to the status quo that obtained after he reached maximum medical improvement from the first injury, until the second injury occurred.
The judge of compensation claims rejected Dr. Zilioli's opinion, given under oath, that the second injury produced no increased impairment or restrictions. Curiously enough, the judge relied on Dr. Zilioli's own office notes made on certain dates in May and June of 1991 to find that Mr. Jackson sustained additional permanent impairment in the second accident, which he found had caused 75 to 80 per cent of Jackson's continuing orthopedic complaints, and an increased overall disability.
It is one thing to reject Dr. Zilioli's sworn opinion that the second accident in no way contributed to Mr. Jackson's present disability. In general, a judge of compensation claims may reject uncontroverted testimony which he does not believe. Ullman v. City of Tampa Parks Dept., 625 So.2d 868, 873 (Fla. 1st DCA 1993). It is quite another, however, in the absence of any other medical evidence, to cite portions of Dr. Zilioli's office notes as the basis for a medical finding completely at odds with Dr. Zilioli's views.
*605 On deposition, Dr. Zilioli testified unequivocally that Mr. Jackson had fully recovered from the second injury, and had been completely restored to the status quo ante. Dr. Zilioli conceded that his opinion had been influenced by viewing surveillance videos (in late January of 1992), but there is nothing inherently improper in this. His office notes from late 1991 and early 1992 indicate that his opinion was affected, as well, by the negative findings an electromyogram produced in November of 1991, and by his inability to find physical causes for Jackson's various complaints of pain.
Jackson's own testimony that his pain increased and that his activities were more restricted, after the date of his maximum medical improvement from the second accident, is insufficient to support a finding of increased disability attributable to the second accident, because a lower back condition is not readily observable or subject to evaluation by lay persons. Arand Constr. v. Dyer, 592 So.2d 276, 281 (Fla. 1st DCA 1991); Vero Beach Care Ctr. v. Ricks, 476 So.2d 262, 264 n. 1 (Fla. 1st DCA 1985). A finding of permanent impairment can only be based on a rating given by a medical expert. Escambia Council on Aging v. Goldsmith, 500 So.2d 626, 633 (Fla. 1st DCA 1986).
Having rejected the testimony of the only medical witness as to any putative increase in disability, the judge of compensation claims erred in finding that Mr. Jackson sustained additional permanent impairment in the second accident. While Dr. Robert Guskiewicz, an anesthesiologist who administered three series of epidural blocks to Jackson, between August of 1991 and October of 1992, testified that he did not believe that Mr. Jackson was malingering, Dr. Guskiewicz's initial treatment of Mr. Jackson took place well after the second accident occurred. Dr. Guskiewicz could offer no opinion on the etiology of Mr. Jackson's back pain.
In the absence of competent substantial evidence to support a finding of increased disability resulting from the second accident, we reverse the order directing Atlas and Alexsis to pay all orthopedic expenses from the date of the second accident "and continuing." Their responsibility ended on January 19, 1992. Since the evidence established no increased permanent impairment, restrictions, or disability attributable to the second accident, responsibility for continuing orthopedic care reverted to Inland and CNA, once Jackson attained maximum medical improvement from the second accident, in accordance with the terms of their settlement agreement with Mr. Jackson. See City of Miami Beach v. Garabedian, 511 So.2d 670 (Fla. 1st DCA 1987).
Atlas and Alexsis' claim for a retroactive social security offset is without merit. See Horton v. Martin Memorial Hosp., 610 So.2d 1352 (Fla. 1st DCA 1992).
REVERSED and REMANDED.
BOOTH and MICKLE, JJ., concur.