852 So.2d 916 (2003)
Dorothy F. ALLEN, Appellant,
v.
PROTEL, INC., and Travelers Insurance Company, Appellees.
No. 1D02-1265.
District Court of Appeal of Florida, First District.
August 21, 2003.
*917 H. Guy Smith of Smith, Feddeler, Smith & Miles, P.A., Lakeland; Susan W. Fox *918 and Brendan M. Lee of Macfarlane, Ferguson & McMullen, Tampa, for Appellant.
Peter H. Dubbeld of Dubbeld & Kaelber, P.A., St. Petersburg, for Appellees.
ERVIN, J.
This is an appeal from a final workers' compensation order in which Dorothy F. Allen, claimant, argues that the judge of compensation claims (JCC) erred in denying her claim for permanent total disability (PTD) benefits. We reverse and remand, because the findings recited in the order are so conflicting and inconsistent as to make meaningful review impossible.
After claimant suffered an industrial injury to her back on January 23, 1998, and received treatment therefor, she was diagnosed with depression, and she sought temporary total and/or temporary partial disability benefits, or, in the alternative, if she were determined to be at maximum medical improvement (MMI), PTD benefits. Her treating psychiatrist, Dr. Arturo Gonzalez, opined that claimant was at MMI as of August 1998, with a permanent impairment (PI) of 10 percent, and was totally disabled from her psychiatric condition alone.
Claimant later obtained an independent medical examination (IME) from Dr. Robert Martinez, a neurologist, who diagnosed her as suffering from chronic severe cervical, thoracic and lumbosacral strains, which he attributed to her work activities, and opined that she was at MMI with a 23-percent PI rating to the body as a whole and unable to return to any type of employment. His report contrasted sharply with that of Dr. James Patterson, a physiatrist, who diagnosed claimant with chronic neck pain syndrome which did not require surgery, and he assigned a 3-percent PI rating for her cervical condition and a 3-percent rating for soft-tissue injuries.
Thereafter, Protel, Inc., and Travelers Insurance Company, the employer and carrier (E/C), retained Dr. Arthur Forman to perform a psychiatric evaluation. He concluded that claimant was malingering and had no need for psychiatric care and was able to work. Upon receiving Dr. Forman's report, claimant selected Dr. Thomas McClane to perform a psychiatric IME. He opined that she was suffering from severe major depression and pain disorder, that she was not yet at psychiatric MMI, and that she was unable to perform even sedentary work on a continuous and uninterrupted basis due to her chronic pain and depression.
Because the opinions of Drs. Forman and McClane conflicted, the JCC appointed Dr. Charles Dack as a psychiatric expert medical advisor (EMA). When Dr. Dack first evaluated claimant in December 1999, he concluded that she was malingering. He based his opinion primarily on what he determined was an inconsistency between her history and behavior during his evaluation, and what he observed on a surveillance video secured by the E/C in November 1998, in which she was seen doing numerous physical tasks with no apparent difficulty.
Claimant thereafter came under the care of Dr. David Cahill, a neurosurgeon, who, after diagnosing her with cervical spondylosis with a two-level root and cord compression, performed a C5 corpectomy and a C4-6 anterior cervical fusion in March 2000. In September 2001, she returned to Dr. Martinez for an updated neurological IME, which verified the presence of swelling and muscle spasm in the cervical, thoracic and lumbar areas of the spine. Based upon his findings, he again concluded that she was totally disabled and required chronic-pain management and psychiatric treatment.
*919 Claimant also sought updated evaluations from Drs. McClane and Dack. Upon conducting his examination in October 2001, Dr McClane placed claimant at psychiatric MMI with a 24-percent PI rating and advised that she was unable to engage in any type of continuous, uninterrupted work activity. Based upon information regarding claimant's neck surgery that was unavailable to him at the time of his initial examination, Dr. Dack, in January 2002, concluded that his former opinion that claimant was malingering was incorrect, and he then diagnosed her with a mood disorder due to spinal disease with chronic, severe pain, as well as a major depressive episode.[1] Dr. Dack determined that she had reached psychiatric MMI with a 20-percent psychiatric PI rating and opined that she was totally disabled from a psychiatric standpoint.
In his final order of compensation, the JCC decided that claimant had established compensable physical and psychiatric injuries as a result of her industrial accident. Finding that she had demonstrated a 10-percent psychiatric PI and a 9-percent physical PI, the JCC concluded claimant had sustained an overall PI rating of 19-percent to the body as a whole. Based on these ratings, the JCC determined that she was capable of substantial gainful employment and denied her request for PTD benefits. He did, however, award her temporary partial disability (TPD) benefits and ordered the E/C to pay impairment benefits to her upon the expiration of 104 weeks of TPD benefits. He further ordered the E/C to pay for past psychiatric care and treatment with Dr. Gonzalez and authorized Dr. Gonzalez to provide further care and treatment as necessary.
Although claimant recognizes that our review standard over the order appealed is that of competent, substantial evidence (CSE), she nonetheless argues that the JCC erred in denying her claim for PTD benefits, in that there is no clear and convincing evidence to overcome the opinion of the EMA physician that claimant was incapable of employment from a psychiatric standpoint. Claimant points out that the presumption of correctness accorded to an EMA's opinion can only be overcome by clear and convincing evidence. See § 440.13(9)(c), Fla. Stat. (1997). As so phrased, claimant's argument implies that our review standard is to decide whether the findings in the JCC's order are supported by clear and convincing evidence. This court, however, has on numerous occasions explained that is not our task. For example, in McKesson Drug Co. v. Williams, 706 So.2d 352, 353 (Fla. 1st DCA 1998), we pointed out that the heightened standard of proof before a JCC does not change the standard of review in an appellate court. We continued with the following pertinent comments:
In civil cases involving the burden of clear and convincing evidence, an appellate court may not overturn a trial court's finding regarding the sufficiency of the evidence unless the finding is unsupported by record evidence, or as a matter of law, no one could reasonably find such evidence to be clear and convincing. Accordingly, the appellate court's function is not to conduct a de novo proceeding or reweigh the evidence by determining independently whether the evidence as a whole satisfies the clear and convincing standard, but to determine whether the record contains competent substantial evidence to meet the clear and convincing evidence standard.
Id. at 353-54 (citations omitted).
On review of an order rejecting an EMA's opinion, this court, while reiterating *920 the rule stated in McKesson Drug Co., pointed out that the application of the CSE standard still requires the reviewing court "to decide whether there was a reasonable basis for rejecting an expert medical advisor's opinion as clearly and convincingly disproven." Walgreen Co. v. Carver, 770 So.2d 172, 175 (Fla. 1st DCA 2000). We observed, regarding the effect of such evidence:
An expert medical advisor's opinion is presumed to be correct and may only be rejected on the basis of clear and convincing evidence. See § 440.13(9)(c), Fla. Stat. (1999). We have said that an expert medical advisor's opinion has "nearly conclusive effect." ... It creates a presumption that can be overcome only by "evidence ... of a quality and character so as to produce in the mind of the JCC a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established [and therefore the falsity or inaccuracy of the expert medical advisor's opinion]."
Id. at 174 (citations omitted).
In our judgment, the order before us fails to satisfy the above test, thereby seriously compromising our ability to conduct meaningful review. In rejecting the amended psychiatric opinion of Dr. Dack, the EMA who had opined that claimant was totally disabled from a psychiatric standpoint, the JCC simply found the change in the EMA's opinion of claimant's condition from malingering to totally disabled was "inordinately extreme." He explained that Dr. Dack revised his opinion once he had been apprised that claimant had undergone cervical surgery following his initial opinion of misrepresentation, in which he had concluded there was an inconsistency between the history claimant gave him during the evaluation and her activity in a surveillance film.
While rejecting Dr. Dack's opinion of total disablement, the JCC also accepted Dr. Gonzalez's 10-percent psychiatric PI rating. The order explains that Dr. Gonzalez, unlike Dr. Dack, had the "opportunity to evaluate the claimant over an extended period of time and is in a better position to determine her permanent impairment rating." This particular portion of the order, however, makes no reference to the fact that Dr. Gonzalez had also opined claimant was totally disabled from her psychiatric condition alone, and the JCC never specifically rejected Dr. Gonzalez's opinion in such regard.
It is important to note that the only conflicting medical evidence before the JCC opining that claimant retained a substantial earning capacity, and hence was not PTD, came from Drs. Patterson and Forman, which the JCC totally rejected, and his rejection was adequately displayed by his statement that neither of the two physicians had ever reevaluated the claimant following her cervical surgery. As a consequence of the preclusion of their opinions, no medical evidence remained before the JCC from which he could conclude that claimant was not PTD.
It appears from the order that the JCC rejected the claim based solely on his observations of claimant at the hearing and in the surveillance video taken more than 27 months before the hearing, which led him to conclude that claimant had exaggerated the extent of her reports of pain. Absent supporting medical evidence, however, a JCC lacks the prerogative to deny a claim for PTD benefits based only upon his or her observations of a claimant. See Frank's Fine Meats v. Sherman, 443 So.2d 1055, 1056 (Fla. 1st DCA 1984): "Neither the claimant's complaint of pain and his stated limitations, which were not supported by the medical evidence, nor the deputy's observations, are competent substantial *921 evidence to support a finding of PTD." Accord Ronald Allen Trucking Co. v. Helton, 449 So.2d 874, 876 (Fla. 1st DCA 1984). See also Arand Constr. Co. v. Dyer, 592 So.2d 276, 281 (Fla. 1st DCA 1991) (reversing the JCC's order awarding benefits based exclusively on lay testimony regarding a nonobservable back condition). Indeed, in accepting only 9 percent of Dr. Martinez's 23-percent physical PI rating, the JCC relied only on his own observations of claimant, and not upon any other medical evidence before him. The rule is well-established that a finding of PIlike a finding of PTDcan be supported only by an opinion of a medical expert. See Atlas Van Lines v. Jackson, 642 So.2d 603 (Fla. 1st DCA 1994).
Finally, we note that the JCC's order failed to mention what significance, if any, should be given the admitted decision of the Social Security Administration finding that claimant was PTD. Although the receipt of such benefits is not by itself sufficient to qualify a claimant for PTD benefits under Florida's Workers' Compensation Law, it "may be relevant to a determination of entitlement to PTD benefits under the definition of catastrophic injury contained in section 440.02(34)(f), Florida Statutes." Union Camp Corp. v. Hurst, 696 So.2d 873, 876 (Fla. 1st DCA 1997). On remand, the JCC's order should address whether such evidence has any effect on claimant's alleged entitlement to PTD benefits.
We note that there is evidence in the record from which the JCC could conclude that claimant is PTD from either her psychiatric or orthopedic conditions, or both in combination. See Daws Mfg. Co. v. Ostoyic, 756 So.2d 175, 176-77 (Fla. 1st DCA 2000). Because it is not our function to evaluate and weigh the evidence produced below, we REVERSE the order and REMAND the case for further consistent proceedings.
KAHN, J., CONCURS; PADOVANO, J., DISSENTS with opinion.
PADOVANO, J., dissenting.
I believe that the Judge of Compensations Claims had a reasonable basis for rejecting the expert medical advisor's opinion and that the remaining evidence is sufficient to support the judge's finding that the claimant is not totally and permanently disabled. For these reasons, I dissent.
The expert medical advisor initially said that the claimant was malingering but then changed his mind and rendered an opinion that she was totally disabled. As explained in the final order, the judge thought that it would be imprudent to rely on a witness who had impeached himself with a complete reversal of his own opinion when there were other witnesses who were in a better position to observe the claimant and who had given consistent opinions about her condition. With due respect for my colleagues, I find nothing unreasonable or confusing about the judge's analysis of the case. The majority opinion recognizes that it is not the function of an appellate court to "evaluate and weigh the evidence produced below," yet it appears to me that this is exactly what the court has done.
I would affirm.
NOTES
[1] Dr. Dack gave his revised opinion more than three years after the taking of the surveillance video, which had greatly influenced his original evaluation.